IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| STATE OF MISSOURI ex rel.<br>Attorney General Chris Koster and<br>Missouri Department of Natural Resources,<br><br>Plaintiff,<br><br>vs.<br><br>REPUBLIC SERVICES, INC.; ALLIED SERVICES, LLC; and BRIDGETON LANDFILL, LLC;<br><br>Defendants. | Case No. 4:15-CV-1506 |

## NOTICE OF REMOVAL

Defendants Republic Services, Inc.; Allied Services, LLC; and Bridgeton Landfill, LLC; pursuant to 28 U.S.C. § 1441, hereby remove the above-styled action to this Court from the Circuit Court of St. Louis County, Missouri. This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331 because Plaintiff alleges claims that arise under the laws of the United States. In fact, this Court has exclusive jurisdiction over this action under 42 U.S.C. § 9613(b). In support of this Notice of Removal, Defendants state as follows:

## INTRODUCTION

1. On March 27, 2013, Plaintiff State of Missouri ("Plaintiff") filed this action in the Circuit Court of St. Louis County, Missouri bringing claims under state law in connection with Defendants' operation of a landfill located at 13570 St. Charles Rock Road, Bridgeton, Missouri 63044 ("the Bridgeton Landfill"). *State of Missouri ex rel. Attorney General Chris Koster and Missouri Department of Natural Resources v. Republic Services, Inc., Allied Services, LLC, and Bridgeton Landfill, LLC*, Case No. 13SL-CC01088 (the "Lawsuit"). The Lawsuit was not

removable on the face of the pleading because the original Petition did not raise any questions under federal law.

2. On October 10, 2014, Plaintiff filed its First Amended Petition ("the Petition"). Plaintiff's ten-count Petition seeks injunctive relief and damages for negligence, strict liability, punitive damages, public nuisance, injunctive relief, civil penalties, cost reimbursement, and natural resource damages. On November 25, 2014, Defendants filed their Answers to the Petition. The Petition and the Answers are the current operative pleadings in the Lawsuit. A copy of the Petition together with the complete file of the action filed in St. Louis County, Case No. 13SL-CC03448, is attached hereto as **Ex. 1**. Defendants are unaware of the existence of any process, pleadings, or orders other than the documents included in the exhibits attached hereto.

3. Defendants first ascertained the Lawsuit was removable when they received Plaintiff's expert reports served on September 2, 2015 ("the Expert Reports"). The issues originally framed by the Petition sounded solely in state law and did not purport to assert claims outside of the jurisdiction of the Missouri Department of Natural Resources ("MDNR"). Previously, Plaintiff requested relief, including injunctive relief, only under Missouri law.

4. Upon service of the Expert Reports, it became clear Plaintiff has expanded the injunctive relief it seeks. Through its Expert Reports, Plaintiff, for the first time, explicitly disclosed that it intends to assert control over radiologically impacted materials ("RIM") allegedly found at the Bridgeton Landfill, propose the construction of an isolation barrier at the Bridgeton Landfill as a protective measure,[1] and compel action on groundwater at the Bridgeton Landfill. The Environmental Protection Agency ("EPA") has exclusive jurisdiction over each of these issues. Plaintiff's now-requested relief interferes with EPA's remedial plans underway at

---

[1] Bridgeton Landfill is currently experiencing a subsurface reaction causing increased temperatures and accelerating waste decomposition. The isolation barrier would be intended to isolate the subsurface reaction from the RIM.

the Bridgeton Landfill pursuant to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601 *et seq.* ("CERCLA"). Therefore, the Lawsuit now raises a federal question over which this Court has exclusive jurisdiction.

5. The Bridgeton Landfill is part of the West Lake Landfill Superfund site ("the federal Superfund site"). EPA asserted jurisdiction over the West Lake Landfill Superfund site in 1990 by adding the site to the National Priorities List ("NPL") pursuant to CERCLA. 55 Fed. Reg. 35502 (August 30, 1990) (adding site to the NPL, 40 CFR Part 300 Appendix B). The federal Superfund site is divided into two operable units. Operable Unit 1 ("OU-1") consists of the landfill areas contaminated by radiological contaminated materials. **Ex. 2** at xi. Operable Unit 2 ("OU-2") consists of the other landfill areas not impacted by radionuclide contaminants, including the Bridgeton Landfill. *Id*. Since the site's listing on the NPL in 1990, and in conjunction with the potentially responsible parties, EPA has been evaluating and assessing remedies for the Superfund site. **Ex. 3** at 2.

6. In EPA's July 2008 Record of Decision ("ROD") regarding OU-2, EPA described the division of the cleanup efforts at the federal Superfund site between the federal and state governments: "[EPA] is the lead agency and [MDNR] is the supporting state agency." **Ex. 3** at 1. EPA delegated some requirements for closure and post-closure of the Bridgeton Landfill to Plaintiff under solid waste permits issued by MDNR for the Bridgeton Landfill. *Id*. at 1, 15.[2] However, EPA retained CERCLA response authority over the OU-2. *See* **Ex. 4** ¶ 2. Bridgeton Landfill has always been part of the federal Superfund site subject to EPA's jurisdiction. EPA has made clear the entire federal Superfund site, including the Bridgeton Landfill, remains listed

---

[2] In the ROD, EPA delegated to Plaintiff the implementation of EPA's selected remedy for the Bridgeton Landfill which was closure and post-closure of the Bridgeton Landfill under state solid waste permits. EPA did not delegate to Plaintiff any decision on what additional remedies should be undertaken. Plaintiff's own Expert Report states Plaintiff oversees only solid-waste related operations at the Bridgeton Landfill. **Ex. 17** at Schumacher - 0000020.

on the NPL as a Superfund site governed by CERCLA. **Ex. 5** ¶ 6. Until service of the Expert Reports, the Petition had not invaded EPA's jurisdiction on the federal Superfund site and had remained within the jurisdiction EPA delegated to MDNR.

### **NOTICE OF REMOVAL IS TIMELY**

7. On September 2, 2015 at approximately 9:15 p.m., Plaintiff served Defendants with Plaintiff's 11 Expert Reports. **Ex. 6**.

8. This Notice of Removal is timely because it is filed within thirty (30) days of Defendants' receipt of the papers from which it may be first ascertained that the case is one which has become removable. 28 U.S.C. § 1446(b)(3).

9. "The thirty-day time limit begins running when a plaintiff 'explicitly discloses' she is seeking a remedy that affords a basis for federal jurisdiction." *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1162 (8th Cir. 2013) (quoting *Knudson v. Systems Painters, Inc.*, 634 F.3d 968, 974 (8th Cir. 2011)).

10. Expert reports are a proper "other paper" to make a case removable under § 1441(b)(3). Documents received through discovery have been accepted as §1446(b)(3) "other papers." *See, e.g., Knudson*, 634 F.3d at 974 (document received from State's Department of Workers' Compensation quantifying some of plaintiff's alleged damages was "other paper"); *Snowdon v. A.W. Chesterton Co.*, 366 F. Supp. 2d 157, 162 (D. Me. 2005) (supplemental interrogatory responses were first paper from which removability could be ascertained); *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 465-467 (6th Cir. 2002) (collecting cases holding deposition can trigger removability clock); *Wilson v. Gen. Motors Corp.*, 888 F.2d 779, 782 (11th Cir. 1989) (response to request for admission constituted "other paper"). *See also Atwell*, 740 F.3d at 1162 (plaintiffs' attorneys' statements at motions hearing, later transcribed "like deposition

testimony," are "other papers" and showed extent of consolidation and application of Class Action Fairness Act).

11. The complaint in *Peters*, 285 F.3d at 465-467, did not make a federal claim under the federal Employee Retirement Income Security Act, but the Sixth Circuit upheld the district court's finding that the plaintiff's deposition was a proper "other paper" to trigger the 30-day removal clock. The deposition was a proper "other paper" because it clarified the complaint's general allegations and showed plaintiff was seeking relief under federal law. *Id*. at 467.

12. In *Brinkley v. Universal Health Services, Inc.*, 194 F. Supp. 2d 597 (S.D. Tex. 2002), the court found plaintiffs' expert's deposition testimony constituted "other paper" under § 1446(b)(3). Plaintiffs' counsel initiated the questioning and drew out facts establishing federal question jurisdiction under the federal Emergency Medical Treatment and Active Labor Act. The testimony established a federal question because it was voluntarily elicited by plaintiffs and tacitly established the elements of a federal claim. *Id*. at 599.

13. As in *Peters*, Plaintiff has produced expert reports detailing the type of relief it is seeking in the Lawsuit. As in *Brinkley*, Plaintiff has voluntarily put forth its expert witnesses and has provided the experts' reports as support for Plaintiff's claims and as support for remedies that Plaintiff seeks. Given Plaintiff has responsibility for the experts it puts forth as well as the reports its experts issue, the content of the reports illustrates the relief Plaintiff seeks in the Lawsuit. The Expert Reports demonstrate Plaintiff is raising claims and seeking remedies which fall within the "exclusive original jurisdiction" of the United States District Courts pursuant to CERLCA. 42 U.S.C. § 9613(b).

14. The September 2, 2015 Expert Reports provided the first notice that Plaintiff was seeking to assert control over RIM, require construction of an isolation barrier, and compel

action on groundwater at the federal Superfund site. Before service of the Expert Reports, Plaintiff sought to impose liability and to seek remedies in this case solely under state law. The existence of a federal question was, thus, neither established nor ascertainable prior to service of the Expert Reports.

15. No previous request has been made for the relief requested in this Notice.

16. All Defendants join in this Notice of Removal.

## **FEDERAL QUESTION JURISDICTION EXISTS**

17. This Court has original jurisdiction over the Lawsuit under 28 U.S.C. § 1331 and 42 U.S.C. 9613(b). This case may be removed pursuant to 28 U.S.C. § 1441(a) because there exists a federal question under CERCLA.

### I. **Legal Standards**

18. A district court has original jurisdiction over cases "arising under" federal law. 28 U.S.C. § 1331.

19. Federal question jurisdiction under § 1331 is not limited to claims for relief that sound in federal law, but includes claims that originate in state law which, in turn, implicate important issues under federal law:

> There is, however, another longstanding, if less frequently encountered, variety of federal "arising under" jurisdiction, this Court having recognized for nearly 100 years that in certain cases ***federal-question jurisdiction will lie over state-law claims that implicate significant federal issues.*** (Citation omitted). The doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues.

*Grable & Sons Metal Prod., Inc. v. Darue Eng. & Mfg.*, 545 U.S. 308, 312 (2005) (emphasis added).

20. With limited exceptions not applicable here, a district court "shall have exclusive original jurisdiction over all controversies arising under [CERCLA]." 42 U.S.C. § 9613(b). In order to best effectuate the intent of Congress to promote the swift execution of CERCLA cleanups, the exclusive federal jurisdiction provision of § 9613(b) encompasses any challenge to a CERCLA cleanup, including a challenge to, or interference with, the goals and purposes of CERCLA. CERCLA § 113(b), (h); *Fort Ord Toxics Project, Inc. v. Cal. Envt'l Prot. Agency*, 189 F.3d 828, 832 (9th Cir. 1999) (§ 113(b) must be read in conjunction with § 113(h) and shows "only federal courts shall have jurisdiction to adjudicate a 'challenge' to a CERCLA cleanup in the first place").

21. A lawsuit is a CERCLA "challenge" when the relief sought would interfere with remediation plans. *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 675 (8th Cir. 1998). When claims asserted by a party, including state law claims, interfere with the "primary objectives of CERCLA which include 'effectuat[ing] *(sic)* quick cleanups of hazardous waste sites' and 'encouraging voluntary private action to remedy environmental hazards'" and threaten to "circumvent the goals of CERCLA," such claims constitute a challenge to CERCLA and "compel[] [the federal court] to exercise jurisdiction." *Lehman Bros. Inc. v. City of Lodi*, 333 F.Supp.2d 895, 904-06 (E.D. Cal. 2004) (quoting *Fireman's Fund Ins. Co. v. City of Lodi*, 296 F.Supp.2d 1197, 1217 (E.D. Cal. 2003)); *see also N. Penn Water Auth. v. Bae Sys. Aerospace Electronics, Inc.*, CIV.A. 04-5030, 2005 WL 1279091, at *11 (E.D. Pa. May 25, 2005) (State law claims requesting response costs, requirement to install treatment systems, and declaratory judgment raised a federal question as a CERCLA challenge seeking to dictate remedial action and alter cleanup method).

22. A case does not have to explicitly name a federal statute on its face to "arise under" federal law. Under the artful pleading doctrine, a federal court has jurisdiction if a plaintiff in fact bases its claim on a federal statute even if its pleading has been carefully drafted so as to avoid citing any federal law. *Franchise Tax Bd. v. Construction Laborers*, 463 U.S. 1, 22 (1983) ("A plaintiff may not avoid federal jurisdiction by omitting from the complaint federal law essential to his or her claim or by casting in state terms a claim that can be made only under federal law."). Artful pleading will not close off a defendant's right to a federal forum. The courts must "determine whether the real nature of the claim is federal, regardless of plaintiff's characterization." *Gore v. Trans World Airlines*, 210 F.3d 944, 950 (8th Cir. 2000).

23. Upon service of the Expert Reports, it became clear Plaintiff artfully pleaded the First Amended Petition to obfuscate mention of a federal question even though Plaintiff is, in fact, seeking relief arising under federal law and which can only be evaluated by this Court.

## II. Plaintiff Alleges a CERCLA Challenge to EPA's Jurisdiction over Radiologically-Impacted Materials

24. The Expert Reports clarify Plaintiff's sought-after relief and show Plaintiff is attempting to usurp control over RIM allegedly found at the Bridgeton Landfill. EPA has maintained its exclusive jurisdiction over containing and managing RIM "regardless of where it is located at the site." **Ex. 7** ¶ 3. The Missouri Attorney General has acknowledged as much in a March 18, 2014 letter to the EPA: "It is the federal government–whether EPA exclusively or EPA working in conjunction with the Army Corps of Engineers–that is vested with the legal authority and the resources to direct remediation of sites containing OU-1's radioactive waste." **Ex. 8** ¶ 4. EPA has never delegated any authority to Plaintiff over RIM at the federal Superfund

site. In fact, EPA's delegation of some jurisdiction to Plaintiff was based in large part on the *lack* of RIM at the Bridgeton Landfill. **Ex. 3** at 1, 15; **Ex. 9** ¶ 4.

25. Despite EPA's clearly established jurisdiction over RIM at the federal Superfund site, Plaintiff's Expert Reports specifically address RIM. Two Expert Reports, entitled "West Lake Landfill Organic Pollutant Phytoforensic Assessment" and "Report on Westlake Landfill Phytoforensic Assessment using Gamma Spectroscopy" (**Ex. 9, 10**), conclude that RIM is found in vegetation around the federal Superfund site and suggest that the Superfund site is the source of migration.

26. The Expert Report entitled "Review of Subsurface Self Sustaining Exothermic Reaction Incident at Bridgeton Landfill, with a Focus on Causes, Suppression Actions Taken and Future Liabilities" (**Ex. 11**) discusses radiological waste at length and hypothesizes that the subsurface reaction will reach RIM. The Report seeks new relief not requested in the Petition and illustrates Plaintiff's attempts to take RIM away from EPA's jurisdiction.

27. If there were any doubt that Plaintiff is trying to exert control over matters turning exclusively on questions of federal law, its simultaneous extra-judicial conduct dispelled it. Hours after serving the Expert Reports on Defendants, Plaintiff issued a press release highlighting its experts' opinions on RIM. The press release was titled "AG Koster releases new expert reports concluding radiation and other pollutants have migrated off-site at Bridgeton Landfill" and relies on the reports' alleged detection of radiological contamination in trees near the federal Superfund site and allegations of dangers regarding RIM. **Ex. 12**, *AG Koster releases new expert reports concluding radiation and other pollutants have migrated off-site at Bridgeton Landfill*, (Sept. 3, 2015) available at http://ago.mo.gov/home/ag-koster-releases-new-expert-reports-concluding-radiation-and-other-pollutants-have-migrated-off-site-at-bridgeton-landfill.

28. By relying on and publicizing Reports analyzing RIM, Plaintiff has injected new federal claims into the Lawsuit. It is now clear Plaintiff seeks to circumvent EPA's exclusive jurisdiction at the federal Superfund site by asking the trial court to order Defendants to take remedial action on RIM. This attempt to sidestep the federal government's authority interferes with EPA's ongoing CERCLA cleanup and is, thus in sum and substance a CERCLA challenge, which necessarily arises under federal law.

### III. Plaintiff Alleges a CERCLA Challenge to EPA's Jurisdiction over an Isolation Barrier

29. Plaintiff's Expert Reports also impinge on EPA's exclusive consideration of whether to construct an isolation barrier between radiological waste and non-radiological waste at the federal Superfund site. EPA has issued an Administrative Order on Consent governing construction of the isolation barrier. **Ex. 13**. EPA has been working with the U.S. Army Corps of Engineers to develop plans for an isolation barrier at the site. Jurisdiction over the isolation barrier is specifically retained by EPA. **Ex. 14** at 6-7, 11-12; **Ex. 7** ¶ 2; *see also* **Ex. 8** ¶ 5. EPA has made its ongoing authority over this issue abundantly clear and Plaintiff has been made aware of EPA's ongoing authority over the issue. **Ex. 14** at 4.

30. Along with the above-discussed RIM allegations, the Expert Report entitled "Review of Subsurface Self Sustaining Exothermic Reaction Incident at Bridgeton Landfill, with a Focus on Causes, Suppression Actions Taken and Future Liabilities" (**Ex. 11**) also evaluates the subsurface reaction and recommends a series of steps for the trial court to order. The Report at Exhibit 11 repeatedly calls for construction of a physical barrier between portions of the site and demands that a barrier to isolate OU-1 from the remainder of the federal Superfund site be constructed immediately. *Id*. at Sperling/Abedini - 0000022-0000024, - 0000105, - 0000113.

Plaintiff, through its Report, makes these demands even though EPA is in the process of deciding how to address the same issues.

31.     Plaintiff, as disclosed for the first time in its Expert Reports, seeks to compel construction of the isolation barrier through the Lawsuit, thereby dispossessing EPA of its primary jurisdiction on the issue and challenging the ongoing CERCLA process.

### IV.    Plaintiff Alleges a CERCLA Challenge to EPA's Jurisdiction over Groundwater

32.     Finally, Plaintiff, as disclosed in its Expert Reports, seeks to usurp EPA's jurisdiction over groundwater at the federal Superfund site and challenge the ongoing CERCLA cleanup.  As the lead agency at the federal Superfund site, EPA has exclusive jurisdiction over groundwater at the site, including groundwater at the Bridgeton Landfill.  EPA has issued an amendment to its Administrative Order on Consent under which site-wide groundwater investigation is currently being conducted for EPA. **Ex. 15**.  EPA has exercised this jurisdiction by compelling groundwater testing at the site during 2012 to 2014.

33.     Plaintiff's attempt to commandeer EPA's jurisdiction is clear in its Expert Report entitled "Feasibility Study Report Groundwater Remediation, Bridgeton Landfill St. Louis County, Missouri." **Ex. 16**.  This Report purports to evaluate five remedial alternatives for the Bridgeton Landfill.  The Report specifically invokes EPA's criteria for remedial alternatives. *Id.* at Hemmen – 0000012 to – 000014.  The Report identifies several remedial alternatives for alleged groundwater contamination from which the trial court is, presumably, to choose and compel Defendants to perform.  Specifically, Plaintiff, through the Report, is asking the trial court to order construction of a slurry wall to contain groundwater[3], an action Plaintiff's Report

---

[3] Labeled "Alternative 5" at Exhibit 16.

- 11 -

estimates would cost approximately $32,000,000.00. *Id*. at Hemmen – 0000029. Plaintiff describes the purpose of the Report as being "to analyze remediation options related to potential groundwater contamination." **Ex. 12**. This description underscores Plaintiff's intention to ask a state court to select a remedy for the federal Superfund site even though federal courts have exclusive jurisdiction over such issues. Furthermore, Plaintiff's proposed remedy is to be considered by a state court while EPA is actively considering whether and how to address groundwater contamination at the Bridgeton Landfill. Plaintiff seeks to wrest jurisdiction away from EPA by asking the trial court to order construction of a slurry wall for $32 million without an EPA decision, National Contingency Plan compliance, or mandatory EPA National Remedy Review Board review.

34. EPA's jurisdiction is unmistakable from Plaintiff's own Expert Report authored by a federal agency, the United States Geological Survey. The Report, entitled "Background Groundwater Quality, Review of 2012-14 Groundwater Data, and Potential Origin of Radium at West Lake Landfill site, St. Louis County, Missouri," was written a year ago for the explicit purpose of assisting EPA in considering whether and how to respond to water quality issues at this CERCLA site. **Ex. 17**. The Report explores potential origins of radium above the Maximum Contaminant Level in groundwater wells at the site. Plaintiff's reliance on this federal report created for EPA to allow EPA to assess the federal Superfund site's groundwater is a clear example of Plaintiff's attempt to commandeer EPA's jurisdiction over groundwater at the site.

35. Plaintiff's desire to compel action on groundwater at the federal Superfund site notwithstanding EPA's exclusive jurisdiction is also evident from other expert reports it served on defendants. Those include an Expert Report entitled "Bridgeton Sanitary Landfill Groundwater Investigation Report" (**Ex. 18**), which reviewed data from groundwater at and near

the Bridgeton Landfill. The Report discusses Bridgeton Landfill's groundwater gradient and potential for impact on management of the Bridgeton Landfill. The Report also opines that landfill operations have potentially impacted groundwater near the Bridgeton Landfill. Similarly, the Expert Report entitled "Report on Redox Reactions Inferred from the Chemical Composition of Water Collection from the PZ-104-SD and PZ-106-SD Monitoring Wells at the Bridgeton Sanitary Landfill, St. Louis County, Missouri" took the data collected in the "Investigation Report" Expert Report and purports to determine trends. **Ex. 19**. The Report alleged potential chemical migration through groundwater from the Bridgeton Landfill.

36. Asking the trial court to order Defendants take certain action on groundwater invades EPA's jurisdiction on the matter. Plaintiff disregards EPA's authority on groundwater and now asks the trial court to short-circuit the CERCLA cleanup process by compelling remedial action through the Lawsuit.

## **REMOVAL TO THIS JUDICIAL DISTRICT IS PROPER**

37. Venue is proper in the Eastern Division of the United States District Court for the Eastern District of Missouri under 28 U.S.C. §§ 1441(a) and 1446(a) because the Circuit Court for St. Louis County, Missouri is located within the Eastern Division of this judicial district pursuant to Local Rule 3-2.07(A)(1).

38. Venue is also proper under Local Rule 3-2.07(B)(3) because the Lawsuit is a civil action brought against multiple non-resident defendants and the claim for relief arose in Bridgeton, St. Louis County, Missouri.

39. As required by 28 U.S.C. § 1446(a) and Local Rule 81-2.03, true and correct copies of all pleadings on file with the Circuit Court of St. Louis County to date are attached hereto.

40. Written notice of the filing of this Notice of Removal will be promptly served on Plaintiffs' counsel and a copy has been filed with the Clerk of the Circuit Court of St. Louis County.

41. Defendants' Notice to Clerk of Filing Notice of Removal will also be promptly filed with the Clerk of the Circuit Court of St. Louis County.

42. Defendants hereby reserve their rights to assert any and all defenses to Plaintiffs' Petition, including but not limited to failure to state a claim upon which relief can be granted.

43. Defendants reserve the right to amend or supplement this Notice of Removal.

WHEREFORE, Republic Services, Inc., Allied Services, LLC, and Bridgeton Landfill, LLC respectfully remove the Lawsuit now pending in the Circuit Court of St. Louis County, State of Missouri to this Court.

Dated: October 1, 2015　　　　　　　　　　　LATHROP & GAGE LLP

By: */s/ Matthew A. Jacober*
William G. Beck　　26849MO
Allyson E. Cunningham 64802MO
2345 Grand Boulevard, Suite 2200
Kansas City, Missouri 64108-2618
Telephone: (816) 292-2000
Telecopier: (816) 292-2001
wbeck@lathropgage.com
acunningham@lathropgage.com

Matthew A. Jacober　　51585MO
Patricia L. Silva　　67213MO
Pierre Laclede Center
7701 Forsyth Blvd., Suite 500
Clayton, Missouri 63105
Telephone: (314) 613-2800
Telecopier: (314) 613-2801
mjacober@lathropgage.com
psilva@lathropgage.com

ATTORNEYS FOR DEFENDANTS

**CERTIFICATE OF SERVICE**

       I hereby certify that a copy of the above pleading was served via electronic mail and First Class U.S. mail, postage prepaid, on the following counsel of record, this 1st day of October, 2015:

Chris Koster
Attorney General, State of Missouri
Joel Poole
joel.poole@ago.mo.gov
Peggy Whipple
peggy.whipple@ago.mo.gov
Tom Philips
Tom.phillips@ago.mo.gov
Andrew Blackwell
andrew.blackwell@ago.mo.gov
Emily Ottenson
emily.ottenson@ago.mo.gov
P.O. Box 899
Jefferson City, MO 65102
ATTORNEYS FOR PLAINTIFF

                                        */s/ Matthew A. Jacober*
                                        An Attorney for Defendants