UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

STATE OF MISSOURI ex rel. )
Attorney General Chris Koster, et al., )
 )
Plaintiff, )
 )
v. ) No. 4:15CV1506 RLW
 )
REPUBLIC SERVICES, INC., et al., )
 )
Defendants. )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion for Remand, Costs, and Attorneys' Fees (ECF No. 38). The motion is fully briefed and ready for disposition. Because the Court finds the pleadings are sufficient to make a determination, the parties' motion for oral argument will be denied.

## Background

This case stems from an uncontrolled, underground trash fire, or "subsurface smoldering event," occurring at the Bridgeton Sanitary Landfill in north St. Louis County. (First Am. Pet. ¶¶ 11-17, ECF No. 18) The Bridgeton Landfill is part of the "West Lake Landfill Superfund Site" ("Superfund site") which is owned and operated by the Defendants Republic Services, Inc.; Allied Services, LLC, d/b/a Republic Services of Bridgeton; and Bridgeton Landfill, LLC. (First Am. Pet. ¶ 13; Pl.'s Mem. in Support of Mot. for Remand 3, ECF No. 39) The Environmental Protection Agency ("EPA") has jurisdiction over the Superfund site pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"). (Defs.' Response in Opp. 2, ECF No. 48) The Bridgeton Landfill is an unlined former rock quarry filled with residential, commercial, and other waste, and is designated as Operable Unit 2

("OU-2) of the Superfund site. (First Am. Pet. ¶ 12; Pl.'s Mem. in Support 3) Operable Unit 1 ("OU-1") adjoins the Bridgeton Landfill to the north and contains industrial waste and illegally deposited radioactive material left over from the Manhattan Project. (Pl.'s Mem. in Support 3) The EPA deferred certain authority over the Bridgeton Landfill to the State of Missouri in the ordinary course of its administrative regulation of inactive landfills. (Defs.' Response in Opp. 3; *Record of Decision*, Defs.' Ex. 3 p. 1, ECF No. 2-2)

In December 2010, Defendants reported to the Missouri Department of Natural Resources ("Department") that the Bridgeton Landfill was experiencing elevated temperatures within landfill gas extraction wells, indicating the existence of a "subsurface smoldering event" and fire. (First Am. Pet. ¶¶ 2, 17-18) The fire then intensified, as evidenced by rapid surface soil and landfill debris settlement, increased odors, elevated gas levels, changes in the composition of landfill gas, increased production of leachate, and elevated temperatures. (First Am. Pet. ¶ 18; Pl.'s Mem. in Support 3) Beginning in July 2012, the State of Missouri received complaints from nearby residents and businesses regarding the odors coming from the Bridgeton Landfill that undermined the quality of life for people living and working near the landfill. (First Am. Pet. ¶¶ 19-20)

Since January 2011, the subsurface fire has increased the volume of leachate, liquid that has contacted waste, generated within the landfill to over 150,000 gallons per day. (First Am. Pet. ¶ 25; Pl.'s Mem. in Support 4) The leachate travels into the limestone rock that makes up the floor and walls of the landfill, flowing into the surrounding groundwater. (First Am. Pet. ¶ 23; Pl.'s Mem. in Support 4) On at least one occasion in February 2013, black leachate escaped onto the surface and flowed into a nearby forested area and intermittent stream near the landfill. (First Am. Pet. ¶ 22; Pl.'s Mem. in Support 4)

On March 27, 2012, the State of Missouri filed a Petition against Defendants in the Circuit Court of St. Louis County, Missouri, alleging violations of the Missouri Solid Waste Management, Clean Water, Air Conservation, and Hazardous Waste Management Laws, along with claims for nuisance, cost recovery, and natural resource damages. (Pet., ECF No. 12) The State amended its Petition on October 21, 2014, adding agency liability, veil piercing, negligence, and strict liability, and demanding punitive damages and a jury trial. The State seeks monetary and injunctive relief. (First Am. Pet., ECF No. 18) Defendants removed the action to federal court on October 1, 2015, on the grounds that Plaintiff's expert reports indicated that Plaintiff was expanding the injunctive relief sought to include asserting control over radiologically impacted materials ("RIM"), proposing construction of an isolation barrier at the Bridgeton Landfill, and compelling action on groundwater at the landfill, issues over which the Environmental Protection Agency ("EPA") has exclusive jurisdiction. (Defs.' Notice of Removal ¶¶ 3-4, ECF No. 1) Plaintiff then filed a Motion for Remand, Costs, and Attorneys' Fees. (ECF No. 38)

## Legal Standards

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). A party may remove an action to federal court only if it could have been brought in federal court originally. *Peters v. Union Pac. R.R. Co.*, 80 F.3d 257, 260 (8th Cir. 1996). "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3). The time limit for removal "begins running

when a plaintiff 'explicitly discloses' she is seeking a remedy that affords a basis for federal jurisdiction." *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1162 (8th Cir. 2013) (quoting *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 974 (8th Cir. 2011)). "Other paper" may include an expert report for purposes of removal under 28 U.S.C. § 1446(b)(3). *Hernandez v. Cooper Tire & Rubber Co.*, No. 12-1399-JWL, 2013 WL 141648, at *1 (D. Kan. Jan. 11, 2013); *Maxwell v. E-Z-Go*, 843 F. Supp. 2d 1209, 1216 (M.D. Ala. 2012).

In removal cases, the Court reviews the state court petition and the notice of removal in order to determine whether it has jurisdiction. *Branch v. Wheaton Van Lines, Inc.*, No. 4:14-CV-01735, 2014 WL 6461372, at *1 (E.D. Mo. Nov. 17, 2014). "Where the defendant seeks to invoke federal jurisdiction through removal, . . . , it bears the burden of proving that the jurisdictional threshold is satisfied." *Bell v. Hershey Co.*, 557 F.3d 953, 956 (8th Cir. 2009) (citation omitted). District courts are to resolve all doubts regarding federal jurisdiction in favor of remand. *In re Business Men's Assur. Co. of Am.*, 992 F.3d 181, 183 (8th Cir. 1993).

Defendants have removed this case based on federal question jurisdiction. Under 28 U.S.C. § 1331, "[t]he district court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Whether a defendant may remove a case based on federal question jurisdiction is determined by the 'well-pleaded complaint' rule." *Kaufman v. Boone Ctr., Inc.*, No. 4:11CV286 CDP, 2011 WL 1564052, at *1 (E.D. Mo. Apr. 25, 2011) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 9 (1983)). This rule makes plaintiff the master of his or her claim such that the plaintiff may avoid federal jurisdiction by relying on state law exclusively. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "[A] case is ordinarily not removable on federal question grounds unless the federal question is presented on the face of the plaintiff's complaint." *Kaufman*, 2011

WL 1564052, at *1. To state a claim, a well-pleaded complaint "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 & n.3 (2007)).

However, an independent corollary to the well-pleaded complaint rule is the complete preemption doctrine. *Caterpillar*, 482 U.S. at 2430. This doctrine applies where "the preemptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). In addition, federal question jurisdiction exists where state law claims implicate significant federal issues. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). "This doctrine captures the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law . . . ." *Id.* While there is no single test for jurisdiction over federal issues rooted in state law claims between non-diverse parties, "the question is, does the state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314; *see also Baker v. Martin Marietta Materials, Inc.*, 745 F.3d 919, 924 (8th Cir. 2014).

## Discussion

In the Motion for Remand, Plaintiff asserts that the Defendants have not established any basis for this Court to exercise subject matter jurisdiction over Plaintiff's state law claims.[1]

---

[1] Plaintiff also raises a timeliness argument. However, Plaintiff did not reply to Defendants' assertion that the removal was timely because, until service of the expert reports, the Petition had not invaded the EPA's jurisdiction over the federal Superfund site and had remained within the

5

Plaintiff contends that Missouri is not seeking control over RIM, nor do any of the State's expert reports raise a CERCLA challenge. Defendants, on the other hand, argue that Plaintiff's expert reports include requests giving rise to federal jurisdiction. Specifically, Defendants maintain that the expert reports demonstrate that Plaintiff has made a CERCLA challenge because the relief sought would interfere with the EPA's remediation plans at the federal Superfund site. Defendants assert that Plaintiff intends to introduce evidence that supports remedies regarding RIM, an isolation barrier between OU-2 and OU-1, and the RIM in the groundwater.

First, Defendants assert that Plaintiff is seeking injunctive relief in this case to address RIM. Defendants contend that the report from Professor Joel G. Burken explained that he and others were asked to investigate both non-radioactive substances and RIM. (*West Lake Landfill Organic Pollutant Phytoforensic Assessment* p. 3, Defs.' Ex. 9, ECF No. 2-8) Further, Defendants maintain that Plaintiff identified another phytoforensic witness that was devoted exclusively to opinions concerning offsite RIM. In the beginning summary of his report, Professor Shoaib Usman discussed the presence of RIM throughout the area near the Bridgeton Landfill. (*Report on Westlake Landfill Phytoforensic Assessment using Gamma Spectroscopy* p. 1, Defs.' Ex. 10, ECF No. 2-9) He specifically stated that the West Lake Landfill had two areas, Radiological Area 1 and 2 which contained radioactive material. He found trace amounts of radioactivity in samples of tree cores. (*Id.*) Professor Usman further mentioned that he performed the radiological investigation of the plant samples. (*Id.*) Defendants argue that these witnesses will be presented at trial to suggest operations at the federal Superfund site are the source of offsite contamination, including offsite RIM.

---

jurisdiction the EPA delegated to the Department. As stated above, expert reports can constitute "other papers" under 28 U.S.C. § 1446(b)(3). *Hernandez*, 2013 WL 141648, at *1; *Maxwell*, 843 F. Supp. 2d at 1216. The Court will therefore address only the federal question jurisdiction issue.

Defendants also point to a press release from the Missouri Attorney General's office noting that Professors Burken and Usman detected radiological and organic contamination in trees on the property of neighboring land owners, indicating the off-site migration of RIM either in groundwater or aerial transport. (News Release, Defs.' Ex. 12, ECF No. 2-11) Defendants assert that this demonstrates Plaintiff's intention to offer at trial evidence from Burken and Usman that addresses RIM from OU-1. Further, Defendants argue that this evidence is only relevant to the question of whether a remedy is necessary to remove RIM from OU-1 and can only be offered to support relief that Plaintiff intends to request from the Court.

In addition, Defendants highlight Tony Sperling's report which recommends the construction of an isolation barrier to isolate OU-1 from the threat of landfill fire. (*Review of Subsurface Self Sustaining Exothermic Reaction Incident at Bridgeton Landfill, with a Focus on Causes, Suppression Actions Taken and Future Liabilities* p. 105, Defs.' Ex. 11, ECF No. 2-10) Sperling further stated that he did not believe that delaying the construction of the barrier between OU-1 and the North Quarry was in the best interest of Defendants and their shareholders, as those parties could be exposed to liabilities should the worst case scenario occur. (*Id.* at 113) Defendants contend that the report was pursuant to a specific request from Plaintiff for Sperling's company to comment on any additional measures that should be taken to prevent the fire from migrating into the North Quarry and ultimately toward the radiological waste in OU-1. (*Id.* at 5) Defendants argue that this report demonstrates Plaintiff's intention to seek construction of a barrier to isolate OU-1.

Finally, Defendants assert that multiple reports served by Plaintiff raise issues implicating groundwater from OU-1. Defendants first highlight a report from the U.S. Geological Survey pertaining to groundwater quality at the West Lake Landfill Site. (*Background Groundwater*

*Quality, Review of 2012-14 Groundwater Data, and Potential Origin of radium at the West Lake Landfill Site, St. Louis County, Missouri*, Defs.' Ex. 17, ECF No. 2-16) According to Defendants, Plaintiff has not yet succeeded in persuading to U.S. Geological Survey to provide a witness to testify consistent with the report but does plan to introduce such evidence and seek relief on the contents of the report. Defendants argue that these contents "make it clear' that Plaintiff "plans to trample all over the issue of RIM from OU-1" because the EPA asked the U.S. Geological Survey to focus on RIM in the groundwater. (Defs.' Response in Opp. p. 20, ECF No. 48)

Defendants also rely upon a report from Kenny Hemmen, which provides possible alternative remedies for groundwater contamination that encompass the entire Superfund site, not just the Bridgeton Landfill. (*Feasibility Study Report Groundwater Remediation, Bridgeton Landfill St. Louis County, Missouri*, Defs.' Ex. 16, ECF No. 2-15) Defendants argue that Hemmen "plainly intruded into subjects that EPA had reserved for itself, and plainly raised issues under federal law." (Defs.' Response in Opp. p. 21, ECF No. 48) Defendants contend that the report's avowed purpose is to evaluate groundwater remedial alternatives and costs to be used as part of the litigation between Plaintiff and the Defendants. (Defs.' Ex. 16 p. 4, ECF No. 2-15)

Plaintiff, however, argues that Defendants have failed to establish any basis for the Court to exercise subject-matter jurisdiction over Plaintiff's claims. Plaintiff asserts that Defendant has failed to identify one sentence in any of the expert reports where the State of Missouri explicitly discloses that it is seeking a remedy that provides a basis for federal jurisdiction. Indeed, Plaintiff contends that it has not prayed for and is not seeking injunctive relief to require Defendants to address alleged harms stemming from RIM allegedly found at the federal

Superfund site; build an isolation barrier at the Superfund site to separate the Bridgeton landfill from the rest of the site; or take action on groundwater outside the Bridgeton landfill that would overlap with EPA-mandated remedies that EPA is reviewing pursuant to its exclusive jurisdiction under CERCLA. Plaintiff asserts that the press release issued by the Attorney General's Office merely disclosed the State's expert reports to the public and forwarded said reports to other agencies, including the EPA, encouraging them to review the information and take appropriate remedial action. (News Release, Defs.' Ex. 12, ECF No. 2-11)

The Court agrees with Plaintiff that none of the expert reports raises a CERCLA challenge. Defendants merely extract sentences from lengthy reports that mention radioactive materials. For instance, Dr. Burken and Dr. Usman reference radioactive material in their reports and refer to RIM within the Superfund site. However, nothing in these reports demonstrates Plaintiff's intent to seek injunctive relief to remedy RIM. Introducing evidence of RIM around the site is not akin to requesting relief to take RIM away from the EPA's jurisdiction. Indeed, the relief Plaintiff seeks is solely under state law and allows the EPA to pursue its remedies under CERCLA. *See, ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1116 (9th Cir. 2000) (finding plaintiff's right to relief pertaining to the public's right to access information regarding the cleanup was not predicated on federal law but depended on state law; thus, the claims did not arise under CERCLA).

Further, while Sperling recommends a barrier wall to isolate OU-1, nothing in his report demands that Defendants build this barrier. In addition, the report does not explicitly disclose Plaintiff's intent to seek injunctive relief ordering Defendants to construct such a barrier. With regard to the groundwater, Plaintiff correctly notes that neither the report from the USGS, which the EPA commissioned, nor the report from Mr. Hemmen, demonstrate an intent to pursue

9

injunctive or remediation relief related to the RIM in the groundwater. The only relief that Plaintiff requests with respect to the groundwater is for damages, investigative and oversight costs, and cleanup costs from dumping solid waste into the waters in violation of Missouri law. (Pl.'s Am. Compl. ¶¶ 139-48, ECF No. 54) Plaintiff's First Amended Complaint does not involve RIM contamination in the Bridgeton Landfill, nor does it request any injunctive relief related to the remediation of RIM under the exclusive jurisdiction of the EPA. The report from Mr. Hemmen in particular, while presenting alternatives for groundwater remediation and summarizing EPA criteria for selecting an applicable remedial alternative, does not demonstrate an "explicit disclosure" by Plaintiff of its intent to take away the EPA's choice of remedy for RIM in the groundwater. *See ARCO*, 213 F.3d at 1113 ("The fact that [plaintiff's] complaint makes repeated references to CERCLA does not mean that CERCLA creates the cause of action under which [plaintiff] sues."); *Costner v. URS Consultants, Inc.*, 153 F.3d 667, 675 (8th Cir. 1998) (finding plaintiff's complaint did not seek review of or injunction against any remedial activity on the site and thus was not a challenge to the CERCLA removal action).

Defendants' reliance on hand-picked excerpts from lengthy expert reports amounts to an injection of "'a federal question into an otherwise state-law claim . . . [to] transform the action into one arising under federal law.'" *Baker*, 745 F.3d at 924 (quoting *Gore v. Trans World Airlines*, 210 F.3d 944, 948 (8th Cir. 2000). "'Congress clearly expressed its intent that CERCLA should work in conjunction with other federal and state hazardous waste laws in order to solve this country's hazardous waste cleanup problem.'" *New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1244 (10th Cir. 2006) (quoting *United States v. Colorado*, 990 F.2d 1565, 1575 (10th Cir. 1993). This is precisely what Plaintiff is attempting to do in this case, and the Missouri statutes and Missouri law upon which Plaintiff relies do not implicate federal law. *See,*

*e.g., ARCO*, 213 F.3d 1108, 1113-116 (9th Cir. 2000) (holding that the case did not fall within the federal courts' federal question jurisdiction or exclusive original jurisdiction under CERCLA where the claims did not arise under any federal law, and the propriety of the claims would be determined under Montana law alone); *Abbo-Bradley v. City of Niagara Falls*, No. 13-CV-487-JTC, 2013 WL 4505454, at *10-11 (W.D.N.Y. Aug. 22, 2013) (granting plaintiffs' motion to remand where the claims did not expressly challenge the effectiveness of the Landfill remedy, request modification of its remedial components, or seek specific action that could conflict with the remediation process).

"[T]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *see also MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 491-92 (5th Cir. 2002) (finding that neither CERCLA nor a federal consent decree created federal "arising under" jurisdiction over plaintiffs' state law claim). Here, nothing in the First Amended Petition or in the expert reports demonstrates that Plaintiff is making a CERCLA challenge by requesting relief that would interfere with the EPA's remediation plans. Thus, resolving all doubts against removal, the Court finds that Defendants have failed to meet their burden of establishing that the First Amended Complaint raises any actually disputed and substantial issue of federal law. *Grable & Sons,* 545 U.S. at 314. As a result, the Court will grant Plaintiff's Motion to Remand and send the action to the Circuit Court for St. Louis County.

Plaintiff also requests an award of costs and attorneys' fees incurred as a result of the removal, arguing that Defendants lacked an objectively reasonable basis for removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Plaintiff asserts that Defendants waited to remove the case until the state court trial setting was less than six months away and that this

conduct warrants an award of fees and costs. However, "[i]n determining whether the removing party lacked an objectively reasonable basis for seeking removal, 'the district court do[es] not consider the motive of the removing defendant.'" *Convent Corp. v. City of N. Little Rock, Ark.*, 784 F.3d 479, 483 (8th Cir. 2015) (quoting *Diaz v. Cameron Cty. Tex.*, 300 Fed. App'x 280, 281 (5th Cir. 2008) (internal quotation omitted)). Instead, the Court considers the objective merits of removal at the time the party removed the case, irrespective of the ultimate remand. *Id.* (citation omitted). Upon careful consideration of the record, the Court finds that Defendants' basis for removal was not objectively unreasonable, and therefore an award of attorneys' fees and costs in favor of the Plaintiff is not warranted. *Bowler v. Alliedbarton Sec. Servs., LLC*, 123 F. Supp. 3d 1152, 1160 (E.D. Mo. 2015).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Remand, Costs, and Attorneys' Fees (ECF No. 38) is **GRANTED** in part and **DENIED** in part, consistent with this Memorandum and Order.

**IT IS FURTHER ORDERED** that Defendants' Motion for Oral Argument (ECF No. 56) and Plaintiff's Joinder in Defendants' Motion for Oral Argument on Plaintiff's Motion to Remand (ECF No. 87) are **DENIED.**

**IT IS FURTHER ORDERED** that this case is remanded to the Circuit Court of St. Louis County, State of Missouri. An appropriate Order of Remand shall accompany this Memorandum and Order.

Dated this 26th day of April, 2016.

*[signature]*
**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**